[No. 475-3.   Division Three.   June 7, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD E. ROSS, *Appellant*.

*Tim Weaver* (of *Hovis, Cockrill & Roy*), for appellant (appointed counsel for appeal).

*Lincoln E. Shropshire, Prosecuting Attorney*, and *Robert N. Hackett, Jr., Deputy*, for respondent.

EVANS, J.—Defendant Richard E. Ross was charged by information with two counts of second-degree assault with a knife. The first count charged him with assault upon one Loy Ray Markle, and the second count charged him with assault upon one Josephine Wait. In a trial to the court without a jury Ross was found guilty upon the first count.

The second count was dismissed, based upon a finding that Josephine Wait was cut by a knife wielded by the defendant, but that it was not done intentionally. Defendant appeals from judgment and sentence entered on count 1.

Defendant's assignments of error 1, 3 and 4 constitute a factual appeal from the findings entered by the trial court. An examination of the record reveals substantial evidence, supplied by three eyewitnesses to the incident and two eyewitnesses to the actions and statements of the defendant Ross immediately following the incident, which support the trial court's findings and conclusions.

It is not the function of the appellate court to reevaluate the credibility of witnesses. As disclosed by its memorandum opinion and its findings of fact, the trial court carefully reviewed and evaluated the evidence. Those findings support the court's conclusions of law and will not be disturbed.

Defendant next contends the trial court erred in allowing the prosecuting attorney to attempt to impeach its own witness, Anna Ramirez. We do not agree.

Anna Ramirez had maintained a close personal relationship with the defendant Ross for several years. It was she who made the police call which resulted in his arrest, and she was present with several other witnesses when Ross was pointed out to the police as the "man they were after." However, when called as a state's witness she testified that she, not Ross, accidentally stabbed Markle with a knife which she had previously obtained from the kitchen to protect herself from Ross, and that Ross was not in the kitchen before the stabbing. The prosecuting attorney claimed surprise and asked her if she had not told him before trial that Ross was in the kitchen shortly before the stabbing. Mrs. Ramirez answered that she did not recall. When asked if she had not previously stated that Ross had a shiny object in his hand before the stabbing she denied making such a statement. The state did not offer any impeaching testimony. We find nothing in the record to suggest the trial court's finding that Anna Ramirez committed

perjury was based upon the prosecuting attorney's questions. Independent of these questions, there was substantial evidence that the testimony of Anna Ramirez was a fabrication, motivated by a desire to help her boyfriend, Ross. Since the trial was to a court and not to a jury we find no reversible error resulting from the questions asked by the prosecuting attorney.

Defendant also assigns error to the admission of results of a polygraph test which was based upon a stipulation that the results, whether favorable or unfavorable, would be admissible in evidence. Such a stipulation[1] was entered into

---

[1]"IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR YAKIMA COUNTY

| STATE OF WASHINGTON, | FILED MAR. 31, 1971 |
| Plaintiff, | AGNES L. THOMAS, County Clerk |
| vs. | By Lucille Tesh, Deputy |
| RICHARD E. ROSS | No. 16164 |
| Defendant. | STIPULATION |

"WHEREAS, RICHARD E. ROSS, in the presence of his attorney, JOHN NICHOLSON, has been advised prior to any questioning or interrogation of his constitutional rights, to-wit: to remain silent; that any disclosures, statement, admission or confession he makes or which lead to other evidence could and will be used against him in a criminal prosecution; to have a lawyer of his own choice, or an attorney appointed by the court if he is without funds or property, present and representing him prior to any questioning or interrogation and prior to giving or making any disclosure, statement, admission or confession; and his right to stop the questioning and exercise any of his above-stated constitutional rights at any time by indicating his wish to do so, as well as his above-stated constitutional rights in reference to his examination by polygraph or lie detector including his right to refuse to take a polygraph test, and by this stipulation, the admissibility into evidence of all applicable and germane questions, answers and results of his polygraph test, whether favorable or unfavorable to him in the event he is criminally charged with SECOND DEGREE ASSAULT.

"WHEREAS, RICHARD E. ROSS having been advised of his above-stated rights, has requested an opportunity to take a polygraph or lie detector examination to verify his statements of not committing the act of second degree assault.

"WHEREAS, having been advised of my constitutional rights above-stated and the evidentary [sic] implications of this stipulation regarding my examination by polygraph, I, RICHARD E. ROSS am aware of and understand my above-stated constitutional rights and have after consultation with my attorney herein, made a conscious decision, without

by the defendant Ross, his attorney, and the prosecuting attorney. Pursuant to that stipulation a test was conducted by Sgt. Nesary of the Yakima City Police Department. In a pretrial conference with the defendant Ross, his attorney, the prosecuting attorney, and Mr. Nesary present, four questions to be asked of defendant Ross were formulated and agreed upon. When Sgt. Nesary was called to the stand as a witness the following transpired:

Mr. Nicholson: Your Honor, for the sake of time, the defense will stipulate that Mr. Ross and counsel entered

promises, threats, force or coercion by anyone, to forego and waive said rights; now, therefore,

"In consideration of being granted the opportunity to take a polygraph or lie detector test, it is hereby agreed between RICHARD E. ROSS and his attorney herein, JOHN NICHOLSON, and ROBERT N. HACKETT, JR., Deputy Prosecuting Attorney, that said polygraph test will be given on the 18th day of January, 1971, by the Yakima Police Department, and all questions, answers and results of the test applicable and germane to a charge of SECOND DEGREE ASSAULT, whether favorable or unfavorable to RICHARD E. ROSS will be admissible in evidence in any trial.

"By this stipulation, Richard E. Ross and his attorney herein, and the State of Washington, by and through its attorney, Robert N. Hackett, Jr., expressly waive any legal objection whatsoever that either party might have to the admission into evidence of all questions, answers and results of said polygraph test which are applicable and germane to the charge herein of Second Degree Assault—Two counts, whether favorable or unfavorable to the defendant, Richard E. Ross.

"This stipulation has been entered into freely, voluntarily and knowingly by all parties hereto with full awareness and explanation of the possible legal consequences.

"DATED this 18th day of January, 1971.

"/s/ Richard E. Ross
     Richard E. Ross
     _____
     Defendant

"/s/ John Nicholson
     John Nicholson
     _____
     Attorney for Defendant

"/s/ Robert N. Hackett, Jr.
     Robert N. Hackett, Jr.
     _____
     Deputy Prosecuting Attorney

"WITNESSES:

.................................................
.................................................."

into a stipulation with Mr. Hackett, wherein Ross volunteered to take a polygraph and did take it with Sgt. Nesary.

Without objection, Sgt. Nesary then testified to his training and experience as a polygraph operator and that the test was conducted under proper conditions. The questions which had previously been agreed upon were: (1) Do you know for sure who intentionally cut Markle? (2) Did you intentionally cut Markle? (3) Did you intentionally swing a knife at Josephine Wait? and (4) Before Markle was cut, did you have a knife in your hand? Sgt. Nesary testified that he received a deceptive reaction to questions 1, 2 and 4, which related to the assault involving Markle, and that Ross' answer of "No" to the third question, relating to the assault charge upon Josephine Wait, was not deceptive. In his opinion, Ross was not telling the complete truth in answering questions 1, 2 and 4. Sgt. Nesary was cross-examined at length as to his qualifications and training, the conditions under which the test was administered, and the limitations of and possibility of error in the technique of polygraph interrogation.

The court found that the polygraph machine was in good working order, that Sgt. Nesary was an experienced operator of a polygraph, and that accurate readings of the results of such a test can be obtained in about 90 per cent of all tests.

Our Supreme Court has had occasion to comment on the admissibility of the results of a polygraph test in several cases.

In *State v. Rowe*, 77 Wn.2d 955, 468 P.2d 1000 (1970) the defendant, unrepresented by counsel, requested a polygraph test. The examination was given and the court points out that there was no stipulation concerning admissibility of the results. The report of the test was inconclusive. Defendant offered evidence of his willingness to take the test in order to show a consciousness of innocence. In holding the trial court was correct in rejecting defendant's offer, the Supreme Court stated, at page 958:

Since it is generally held that polygraph tests are not judicially acceptable, 22A C.J.S. *Criminal Law* § 645 (2) (1961), it is obvious that a defendant should not be permitted to introduce evidence of his professed willingness to take such a test. *Commonwealth v. Saunders,* 386 Pa. 149, 125 A.2d 442 (1956); *State v. Chang,* 46 Hawaii 22, 374 P.2d 5 (1962). At best such an offer is a self-serving act or declaration which is made without any possible risk. If the offer is accepted and the test given, the results cannot be used in evidence whether they were favorable or unfavorable. *Commonwealth v. Saunders, supra; State v. LaRocca,* 81 N.J. Super. 40, 194 A.2d 578 (1963). In short, a defendant has everything to gain and nothing to lose by making the offer, so the conduct underlying the so-called inference of innocence can well be feigned, artificial and wholly unreliable.

Thus, even if the defendant was effectively precluded from raising the issue by fear that the test results might be disclosed, the trial court committed no error. The defendant's offer of evidence was patently self-serving and thus inadmissible at the outset.

*Seattle Police Officers' Guild v. Seattle,* 80 Wn.2d 307, 494 P.2d 485 (1972) involved a departmental administrative investigation of an alleged payoff system in the police department. During the course of inquiry the acting chief of police proposed to require certain officers to submit to a polygraph examination under threat of dismissal if they refused to cooperate. This proposal was based upon a police department general order which required the cooperation of officers in internal departmental investigations.

As we read the majority opinion, it attributed some probative value to a polygraph test when it stated, at page 320:

if, in the exercise of prudent judgment, the investigating authority determines it reasonably necessary to utilize the polygraph examination as an investigatory tool to test the dependability of prior answers of suspected officers to questions specifically, narrowly, and directly related to the performance of their official duties, then, such investigating authority may properly request such officers to submit to a polygraph test under pain of dismissal for refusal.

However, as to the admissibility of the polygraph test in any subsequent criminal proceedings, the court continued, at page 320:

> Bearing in mind that the reasonableness of an investigating authority's request, under varying circumstances, can be subjected to judicial scrutiny and abuses of discretion thereby curbed, coupled with the fact that, in any event, the results of a polygraph test and a subject's willingness or unwillingness to take the test cannot be admitted into evidence in subsequent criminal proceedings, we see no constitutional or legal barrier to the conclusion we have reached.

In *State v. Stiltner*, 80 Wn.2d 47, 491 P.2d 1043 (1971), as in *State v. Rowe, supra,* the court again indicated that, generally speaking, polygraph tests are not yet judicially acceptable, but at the same time indicated a distinction may be drawn when there is a stipulation that the results of such a test will be admitted. *Stiltner* involved pretrial publicity of lie detector tests given four persons but refused by defendant. The court stated, at page 51:

> And in publicizing the cooperation of the other four clerks in submitting to the lie detector, the publicity did not disclose that the defendant's refusal to submit was upon advice of counsel, who very properly *refused to agree to the prosecutor's condition that the results of the test would be admitted as evidence in the trial.*

(Italics ours.) Thus, our Supreme Court has made it clear that, absent a stipulation, the results of a polygraph test cannot be admitted into evidence in a criminal proceeding over objection of a defendant, but those decisions do not meet the issue here presented. None of them involves an agreement of all parties that the results may be admitted.

Courts from other jurisdictions have found a valid distinction between the admissibility of polygraph tests taken upon stipulation that the results will be admissible in evidence, and those where there is no such stipulation. *State v. Valdez,* 91 Ariz. 274, 371 P.2d 894 (1962); *State v. Chambers,* 104 Ariz. 247, 451 P.2d 27 (1969); *State v. Forgan,* 104 Ariz. 497, 455 P.2d 975 (1969). *See also State v. McNamara,*

252 Iowa 19, 104 N.W.2d 568 (1960); *People v. Houser*, 85 Cal. App. 2d 686, 193 P.2d 937 (1948); *Herman v. Eagle Star Ins. Co.*, 283 F. Supp. 33 (C.D. Cal. 1966).

■ While all courts are not in complete agreement, we are persuaded that the better rule is that the results of a polygraph test are admissible for the purpose of corroboration under the conditions and limitations set forth in *State v. Valdez, supra,* which we adopt verbatim. They are as follows:

(1) That the [prosecuting attorney], defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

(2) That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge, i. e. if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

(3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:

a. the examiner's qualifications and training;

b. the conditions under which the test was administered;

. c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and

d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

(4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given.

All of the above conditions applicable to the present case have been met. As already noted, there was substantial

evidence that defendant Ross committed the assault charged against him. The polygraph evidence was merely corroborative, and the trial court treated it as such. Defendant was given the right to cross-examine the examiner regarding his qualifications and training, the conditions under which the test was administered, and the limitations and possibility ·of error in technique of polygraph interrogation. The court found that the polygraph machine was in good working order, and that Sgt. Nesary was an experienced polygraph operator. Under these circumstances we hold admission into evidence of the results of the polygraph test was within the discretion of the trial judge.

We find no abuse of that discretion.

Judgment affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied July 12, 1972.

Review denied by Supreme Court August 18, 1972.