[No. 43950.    En Banc.    May 20, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. RICKY A. YOUNG, *Appellant.*

*G. Perrin Walker,* for appellant.

*Curtis Ludwig, Prosecuting Attorney for Benton County,* and *John Crawford* and *Dennis D. Yule, Deputies,* for respondent.

ROSELLINI, J.—The appellant was found guilty of one count of arson in the first degree (in setting fire to the house in which he lived with his wife) and one of arson in the second degree (in setting fire to a church). Both fires occurred in the nighttime in the city of Prosser, and both buildings were unoccupied. However, the house, which was an old, frame dwelling, was located about 13 feet from another frame house in which an elderly lady lived in an upstairs apartment. Both houses belonged to the parents of the appellant's wife.

Before the trial, the appellant took a polygraph test which was administered to him by a private operator without the knowledge of the prosecutor. One Pursell, a friend of the defendant, took two such tests which were administered by postal authorities. Pursell's first test indicated that he was practicing deception with respect to statements which he had made accusing the appellant of having attempted to bribe him to provide an alibi and to set fires to divert attention from himself. The polygraph examiner noted on the report that, in his opinion, the act of informing on the appellant was extraordinarily traumatic to Pursell and suggested another polygraph examination, if it was contemplated that Pursell would be used as a witness

against the appellant in the arson trial. A second test was administered about 3 weeks later by a different examiner, who gave his opinion that Pursell was telling substantially the truth concerning the appellant's attempts to induce him to set fires and provide the appellant an alibi.

The appellant wished to offer his own polygraph test result in evidence and cross-examine Pursell with respect to the tests which he took.

The lower court ruled that the evidence concerning the polygraph tests was inadmissible.

The State's evidence (except for that of Pursell) was entirely circumstantial. The circumstances raised compelling inferences that the appellant set both fires. He took the stand and gave a dubious account of his actions and an explanation for burns which he exhibited the day following the church fire which the jury evidently found implausible.

■ After entry of judgment on the verdict, the case was appealed to the Court of Appeals, Division Two, which certified it to this court for consideration of the question whether results of a polygraph test should be admissible in evidence without the stipulation of the parties if an adequate foundation is laid. We indicated in *State v. Woo*, 84 Wn.2d 472, 527 P.2d 271 (1974), that, if at some future time we were presented with a case in which a record had been made disclosing sufficient information about the polygraph test in general, and the one administered in particular, to enable the court to reevaluate its position with regard to the admission of such tests, we might be inclined to reconsider the rule which was adhered to in that case. That rule is that, absent stipulation of the parties, the results of polygraph tests are inadmissible.

Upon examining the record made by the appellant in the case before us, we find it insufficient to support a reconsideration of the rule. Those factors which were mentioned as significant in *State v. Woo, supra,* were not covered in the appellant's offer of proof. We are not shown what the tests consisted of, what the qualifications of the examiners were,

what the standards were which they followed, and what evidence there is of reliability.

Furthermore, the tests given to the appellant and Pursell could only be viewed by the jury as inconclusive, since they were in conflict with each other. To have advised the jury of the results of these tests would have served mainly to divert its attention to a collateral question, namely, the reliability of such tests, instead of focusing it upon the material issues in the case. The court did not err in excluding evidence of results of the polygraph tests.

■ Error is assigned to the giving of instructions setting forth the prosecutor's accusations under the two counts. While admitting that he did not challenge joinder of the two counts of arson prior to trial nor except to the instructions complained of, the appellant now maintains that he should have been tried separately on each count. This court is not in a position to consider this assignment, the question having been raised for the first time on appeal. *State v. O'Connell*, 83 Wn.2d 797, 523 P.2d 872 (1974).

The appellant contends that the joinder of these counts denied him his constitutional right to a fair trial. However, no authority is cited supporting that proposition. In the absence of such citations, we decline to so hold. *Wyatt v. University of Washington*, 84 Wn.2d 1, 523 P.2d 910 (1974). Under RCW 10.37.060 and CrR 4.3(a)(1), joinder of counts is expressly authorized where the acts or transactions are of the same or similar character. CrR 4.4(a)(2) provides that severance is waived if no timely request is made, and CrR 4.4(b)(1) makes the granting of the severance discretionary with the trial court.

■ Error is assigned to the denial of a motion for a continuance, which the appellant based upon a claim that he was caught by surprise when he was informed that Pursell would be called to testify against him. It appears that the appellant's counsel was advised of this fact before the trial and did interview the witness and examine his statements several days prior to the trial.

The appellant contends here that he was not given time

to prepare a defense against this witness. However, he does not claim that there was evidence available to discredit the witness, other than that which was presented at the trial. Absent such a showing we cannot say that the denial of the motion for continuance constituted prejudicial error.

RCW 9.09.010, defining first-degree arson, provides that any person who sets any fire manifestly dangerous to any human life shall be guilty of that crime. The appellant contends there was no evidence that either of the fires involved in this case was manifestly dangerous to human life. We think, however, that the jury could reasonably find, as it did, that the combustibility of the frame house and its proximity to another dwelling, the second floor of which was occupied by an elderly woman whom it was thought necessary to assist from the premises during the fire, made that fire manifestly dangerous. The evidence showed that flames enveloped the structure very quickly after it was ignited. True, the fire was extinguished before it had consumed the structure or spread to the adjoining building; but this does not mean that the danger did not exist. It was for the jury to decide whether the fire was manifestly dangerous to human life, there being evidence from which that inference could be drawn. The jury found that the church fire was not manifestly dangerous to human life, a finding which is likewise in accord with the evidence. The church was a brick building and was not located close to an inhabited dwelling.

Error is assigned to the admission of testimony of two experts, one, a fire inspector who testified on the basis of his inspection that in his opinion both fires were set, and the other, a person who was shown to be qualified to make microscopic analyses of hair samples. The latter testified that singed hair found in the house to which the appellant returned during the fire was of the same type as the appellant's. The appellant's objection to the testimony of both of these witnesses is that there were material matters to which they could not attest. His objection in each case goes

to the weight, rather than the admissibility of the evidence, and the weight is a matter to be determined by the jury.

Several witnesses testified that they heard or observed a man running past their residences shortly after the fire alarm started to sound on the night of the church fire. When the testimony of all of these witnesses was taken together, it showed that the running man followed a path which led from the scene of the fire to the door of the home where the appellant was staying. None of the witnesses identified the man, and it is contended that this fact rendered their evidence inadmissible.

■ While the evidence did not conclusively implicate the appellant, when considered in conjunction with the testimony of his wife's parents, showing that he arrived home at just the time the running man was seen at the door—and that no one else came to the door—it gave rise to a reasonable inference that the appellant fled from the scene of the fire. It showed some of the circumstances tending to link the appellant with the crime. All competent evidence is admissible if it tends logically, naturally, and by reasonable inference to prove or disprove a material issue. *State v. Gersvold*, 66 Wn.2d 900, 406 P.2d 318 (1965). Relevancy lies within the discretion of the trial court. *State v. Cerny*, 78 Wn.2d 845, 480 P.2d 199 (1971). We find no error in the admission of this testimony.

The appellant also complains of the admission of snapshots showing the areas through which the running man was observed to pass. The snapshots were taken in the daytime while the fire occurred in the middle of the night. This fact did not render them irrelevant. The snapshots were merely illustrative of the witness' testimony, and in no way prejudiced the appellant.

Error is assigned to the giving of an instruction concerning the inferences which can properly be drawn from the fact that an accused fled the scene of the crime shortly after its occurrence. The contention is that there was no evidence that the appellant fled from the scene of either fire. The evidence showed that he was seen entering his

house shortly before the first fire, that a man of his description was seen leaving the house on foot only a minute or two before the house was observed to be in flames, and that a man was seen running down the alley a few moments later. The appellant did not reappear at his house until the fire had been extinguished. His automobile remained parked in front of the house throughout this time. These facts, taken with his own admission that he was at the house immediately before the fire broke out, could support an inference that he fled the scene.

With respect to the church fire, the evidence was that, while the siren was still sounding, the appellant rushed in the front door of the home where he was staying, grabbed a robe from his wife and used it to cover his head and arm; that he disappeared into his bedroom, took a shower, and left hurriedly with his wife, saying that they were going to see the fire and spend the rest of the night at his parents' house. These events occurred between 1 and 1:30 a.m. By the appellant's and his wife's own testimony, they did not go to his parents' house but instead went to the Yakima area and stayed with various friends, moving about from house to house and visiting the hospital everyday for treatment of burns on the appellant's face and arm, until the Prosser police came to arrest him.

From these facts the jury could infer that the appellant fled from the scene of the church fire. The instruction concerning flight was therefore proper.

The appellant requested an instruction to the effect that if he did not receive an insurance benefit, this was a circumstance indicating his innocence. The instruction was inappropriate under the facts brought out at the trial. The evidence showed that the 22-year-old appellant and his 18-year-old wife, thinking that their personal belongings were insured under her parents' comprehensive policy, went to see the insurer's agent after the house fire, only to learn that they were not covered. The agent testified that the two were very upset when they were told that there was no insurance. Thus, it will be seen that the requested instruc-

tion did not properly reflect the evidence in the case. The fact that the appellant was not insured would not indicate a lack of motive if he indeed thought that he was insured. Furthermore, monetary gain is not the only motive which may inspire arson. *See* A. Curtis, *The Law of Arson* §§ 339-83 (1936). There was evidence in this case from which the jury could infer that ill feeling was the motive.

■ Error is alleged in allowing certain prosecutorial improprieties during the trial, namely, whispering among the prosecutor's staff (to which no objection was made), a reference in the prosecutor's opening statement to the appellant's "crime" (which was immediately corrected by him on objection of appellant's counsel), and a remark in his argument to the jury that the appellant must have supposed the jury would be naive enough to believe his story. No objection was made to this remark. No attempt has been made to show that any of these incidents was prejudicial. Before a verdict will be set aside for misconduct of a prosecutor, there must be a substantial likelihood that his conduct affected the same. *State v. Music*, 79 Wn.2d 699, 489 P.2d 159 (1971).

Another contention made for the first time on appeal is that a mistrial should have been declared when a prospective juror said that she did not feel qualified to serve on the jury and was excused. No authority is cited for the proposition that such a response on the part of a prospective juror vitiates the trial; and we assume that none exists.

An objection is made to the court's instruction defining reasonable doubt. The instruction was one which was approved in *State v. Tanzymore*, 54 Wn.2d 290, 340 P.2d 178 (1959), and is not shown to be erroneous.

■ Error is assigned to the refusal of the appellant's multiple hypotheses circumstantial evidence instruction. The instruction which was given on this subject was substantially the same as that which was requested and was one which courts have traditionally given. This court has recently said that such an instruction should not be given, as it may mislead the jury and cause it to infer that the

burden of proof is heavier when only circumstantial evidence is relied upon. Thus, we have indicated that the instruction favors the accused. *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975). A defendant, therefore, cannot claim that either the giving or refusing of such an instruction is prejudicial error.

Finally, it is contended that the court erred in refusing to dismiss the charges at the close of the presentation of the prosecutor's case. This claim is based upon the assumption that direct evidence was necessary and that the jury was not entitled to draw inferences from the circumstances.

Arson is an offense which is most often proved by circumstantial evidence. It is one of those crimes which is peculiarly of secret preparation and commission; and it is seldom that the prosecution can furnish testimony of an eyewitness who observed the setting of the fire. It is judicially recognized that a well-connected train of circumstances may be as satisfactory as an array of direct evidence. A. Curtis, *The Law of Arson* § 485, at 517-20 (1936); 6A C.J.S. *Arson* § 48 (1975); 5 Am. Jur. 2d *Arson and Related Offenses* § 47 (1962); *see* W. Hopper, *Circumstantial Aspects of Arson*, 46 J. Crim. L.C. & P.S. 129 (1955).

Here, in addition to the evidence of experts that the house fire was set and not accidental, the evidence of witnesses who saw the appellant going into the house a few minutes before the fire occurred and also saw a person of his description leaving in a surreptitious manner immediately before the house was observed to be in flames, and the evidence of his conspicuous absence while the fire was in progress, there was evidence that the appellant, who was an unemployed construction worker, and his wife had engaged in a fight at their residence 2 days before, during which the sound of breaking glass and splintering wood was heard and after which substantial damage was observed inside the house, which was a barely livable cabin situated next door to his in-laws' comfortable home. There was evidence that the appellant had left the house after the

fight, which occurred in the nighttime, and had driven about the town with his car radio playing loudly.

There was further evidence from which the jury could infer that the appellant and his wife had not reconciled their differences at the time of the fire, at which time the latter was absent from the home. Added to this was the appellant's improbable account of his activities while the fire was being extinguished, in which he admitted being in the vicinity of his home but claimed to have had no curiosity about the reason for the fire siren or the location of the fire. From these circumstances, the jury was entitled to infer that the appellant set the fire. The jury may have surmised that it was an act of resentment toward his wife or toward her parents, or perhaps toward the house itself or his own circumstances. Motive, as the court instructed the jury, was not an element of the crime, but the presence of a likely motive was a circumstance which the jury could consider along with the other circumstances in the case.

The church fire, occurring a few days later, was also deliberately set, according to expert testimony. The evidence showed that the appellant and his wife were staying at the home of her parents, having no money and no other satisfactory place to stay, but had been asked to find other living quarters. The appellant, without his wife, had left the house at about 11:50 p.m. The fire was reported at 12:54 a.m., and the appellant returned home a few minutes after the siren was heard. As stated earlier, he grabbed a robe from his wife, used it to cover his head and arm, and dashed into their bedroom. He immediately took a shower, and shortly thereafter he and his wife left the house hurriedly, saying they were going to spend the night with the appellant's parents, but in fact driving to the Yakima area, where they arrived at the home of a friend at 3 a.m. Their explanation for the appellant's burns, which had to be treated the next day because of their severity, was that they had decided to burn some old love letters by the side of the road on the way to Yakima; that the appellant had used a container of gasoline which he had in the car to

accomplish this purpose, and that the flash fire had burned his arm and face. However, samples of hair and debris found in the home of his wife's parents indicated that the burns had been received while the appellant was absent from the house just before the church fire. Taken with the evidence of witnesses who saw a figure of the appellant's general description running from the vicinity of the church and in the direction of the house where the appellant was staying, and finally saw the person going up to the door of that house, these circumstances tended to point strongly toward the appellant as the person who set the church fire. In addition, the appellant's friend Pursell testified that he admitted to him that he had set that fire.

The evidence was sufficient to show, beyond a reasonable doubt, that the appellant committed the crimes charged.

The judgment is affirmed.

STAFFORD, C.J., HAMILTON, WRIGHT, UTTER, BRACHTEN-BACH, and HOROWITZ, JJ., and RUMMEL, J. Pro Tem., concur.

Petition for rehearing denied August 10, 1976.