[No. 2033-3.  Division Three.  September 5, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. JOAN MARIE BOILEAU, *Appellant.*

260

*Hovis, Cockrill & Roy* and *Ted Roy*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Donald R. Shaw, Deputy,* for respondent.

McInturff, J.—The defendant was convicted by a jury of grand larceny by embezzlement of funds belonging to her former employer.

In the fall of 1973 an audit of the defendant's employer's records revealed that more than $8,000 was missing. When confronted by the employer, the defendant admitted manipulating service and purchase orders but denied taking any cash for her own use. She said she manipulated the orders to cover cash shortages she had discovered because she was afraid of losing her job. When her employment was terminated, she consulted counsel and took a private independent polygraph examination administered by an admittedly qualified polygraph examiner. The examination was conducted without the knowledge of the police or prosecutor's office, and there was *no stipulation* that the results of the test would be admissible.

After an extensive investigation of nearly 2 years, defendant was advised by the prosecuting attorney that she would be criminally prosecuted for the alleged shortages unless she "passed" a polygraph examination *stipulated* to

be admissible in court. On June 12, 1975, both she and her attorney signed a stipulation acknowledging awareness of her constitutional rights, waiving those rights, and stipulating that all questions, answers and results of a test to be given on that day would be admissible in evidence at trial. Upon the decision of the examiner, Sgt. Richard Nesary, that the defendant was not being truthful in regard to questions concerning the embezzlement, she was charged with grand larceny the next day.

■ The primary contention of the defendant concerns whether the court erred in not allowing her to introduce evidence of an unstipulated polygraph examination to impeach the testimony of the unfavorable results of the stipulated polygraph examination. She argues that this resulted in a denial of effective cross–examination—that she was wrongfully deprived of the opportunity to make an offer of proof. The court based its refusal to admit the unstipulated polygraph exam primarily upon Sgt. Nesary's testimony to the effect that it would be necessary to compare questions asked by him with questions asked by the examiner on the prior polygraph; that the questions would have to be worded substantially the same. Sergeant Nesary also said that the background information upon which the questions were founded would have to have been nearly the same. The court said:

> That it [the unstipulated polygraph] may be admissible for impeachment purposes. However, we are in this situation and this is why I allowed the hypothetical question to come out so I could determine what Sgt. Nesary's testimony on this was going to be. He has agreed that there may be a difference of opinion as far as he and Mr. Jenkins are concerned. However, in connection with a previous test, the testimony is that if Mr. Jenkins had the same information and if he had asked the same questions then there would be a disagreement that would be of impeachment value as far as Sgt. Nesary is concerned, but with the testimony that the information to the examiner and the questions would have to be essentially the same in order to create an impeachment situation and with the disparity of time between when the two

tests were taken [about 2 years] and the fact the tests were not essentially the same, I will rule that any further testimony concerning that is inadmissible because it would not go to impeachment of Sgt. Nesary. He had explained why there would be a difference.

We agree with the trial judge.

The law concerning the admissibility of unstipulated polygraph examination results remains certain. The court in *State v. Woo,* 84 Wn.2d 472, 475, 527 P.2d 271 (1974), followed the basic general rule set out in *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), that polygraph examinations are not admissible at trial; however, it said:

> If we are to consider a departure from a virtually unanimous rule against the admissibility of polygraph examinations, *absent stipulation, we must be furnished with a record sufficiently adequate to permit review of the subject.*

(Italics ours.) Adhering to this same rule in *State v. Young,* 87 Wn.2d 129, 131–32, 550 P.2d 1 (1976), the court said that the evidence before them was

> insufficient to support a reconsideration of the rule. Those factors which were mentioned as significant in *State v. Woo, supra,* were not covered in the appellant's offer of proof. We are not shown what the tests consisted of, what the qualifications of the examiners were, what the standards were which they followed, and what evidence there is of reliability.

Here, at the omnibus hearing,[1] defense counsel said the unstipulated polygraph examination and the necessary background data would be furnished to the State. However,

---

[1] On July 9, 1975, an omnibus hearing was conducted and at the hearing the defendant indicated she intended to introduce testimony of an unstipulated polygraph examination conducted by John Jenkins. The following colloquy occurred:

THE COURT: Have you submitted copies of the polygraph report—

MR. ROY [attorney for defendant]: Yes, they have been.

THE COURT: —to the State, Mr. Roy?

MR. ROY: Do you have the original?

MR. SHAW [prosecuting attorney]: No I have never seen it.

MR. ROY: *We will provide it.* I thought it had been. I was not on the case at that time.

(Italics ours.)

the State received neither. During the trial, after testimony by Sgt. Nesary to the effect that the only way to be fair in comparing results of the unstipulated polygraph to his examination would be (1) that the report giving the background information to the polygraph examiner be basically the same and (2) that the questions which were asked be substantially the same; the trial judge repeatedly requested an offer of proof concerning those facts. He indicated that the unstipulated polygraph examination possibly could be used for impeachment purposes but only with proof of the background information available to the prior polygraph examiner as well as the wording of the questions used in the prior test.

Here, there was no proof of either the prior examiner's background information or the questions he asked.

▮ The defendant's last contention is that the court erred in allowing the State to introduce evidence of a defense witness' misconduct as impeachment. The State argues the evidence was presented to show motive on the part of the defendant and to question her memory. We do not answer the specific issue because the court later ruled that the testimony was inadmissible and specifically instructed the jury to disregard and not to consider it. In light of the curative instruction which came immediately before the court read the instructions to the jury, we do not consider the error, if any, to have been prejudicial to the defendant. As stated in *Municipality of Metro. Seattle v. Kenmore Properties, Inc.,* 67 Wn.2d 923, 930–31, 410 P.2d 790 (1966), as quoted from *State v. Gay,* 82 Wash. 423, 428, 144 P. 711 (1914):

> The presumption in all cases is that the jury obeyed the instructions of the court, and this presumption must prevail until it is overcome by some showing that the fact is otherwise.

No such showing was made in this case.

Judgment of the Superior Court is affirmed.

MUNSON, C.J., concurs.

GREEN, J. (dissenting)—The majority seems to hold that the unstipulated polygraph examination is inadmissible for two reasons: (1) defendant's offer of proof was deficient; and in any event (2) a polygraph examination, absent a stipulation, is not admissible for any purpose. I respectfully disagree.

The question of the adequacy of defendant's offer of proof arose during defense counsel's cross–examination of Police Sergeant Nesary concerning the unstipulated polygraph examination conducted by John Jenkins. Officer Nesary conceded that Mr. Jenkins was a qualified examiner with at least 7 more years' experience than he had and conceded that if they each possessed substantially the same background information and asked substantially the same questions, Mr. Jenkins' examination would be entitled to as much weight as his. The prosecution objected to further cross–examination about the unstipulated polygraph unless defense counsel offered to prove that Officer Nesary's requirements as to similarity of information and questions were met. The defense claimed Mr. Jenkins' examination met these requirements; but counsel did not have a copy of the report with him at that moment. The prosecutor, who claimed not to have received a copy of Mr. Jenkins' report, although defense counsel insisted one had been given to him, stated that he had looked at a copy in one of his witness' files and the questions were different. Based on this record, the court ruled that defense counsel could not further cross–examine the officer about the unstipulated examination because he had not offered sufficient proof that Officer Nesary's requirements had been met. To the extent that the majority affirms this ruling, I agree. Certainly, there was no abuse of discretion at that point in refusing further cross–examination.

However, the court went further and ruled prematurely that the unstipulated polygraph could not be admitted into evidence and foreclosed the defendant from calling Mr. Jenkins as a witness in her case. This determination

occurred during the following colloquy immediately after the initial ruling:

MR. ROY [defense counsel]: Your Honor, in the absence of Mr. Jenkins testifying as to what facts he had or didn't have, *I think Your Honor is ruling in advance that we can't call him to do that and I submit that's error and appealable error.*

THE COURT: Well, I understand, counsel, that that would be subject for appeal to the Court of Appeals, but nevertheless my ruling remains the same. I think because of the lapse of time and the additional information that was obtained between the time of the original polygraph examination, the unstipulated polygraph examination, and the information that was then furnished to Sergeant Nesary in June of this year, that that does not lend that degree of validity to the previous polygraph examination to use it for impeachment purposes, particularly in view of the testimony of Sergeant Nesary in terms of these differences.

Q (By Mr. Roy) Sergeant Nesary, what did you learn in June of this year that was not known in April of '74?

A I don't know.

Q What did you learn in June of this year that John Jenkins didn't have?

A I don't know what John had. I have no knowledge of what John had. All I know is the report I got, which was a rather thick report, and I have no knowledge of what—

Q Did you have knowledge he had given a test?

A Oh, yes, yes. I knew John had given a test.

Q You knew she passed it?

A Yes, I did.

Q Did you have his questions?

A No, I did not.

Q You didn't have those?

A (Nods negatively)

MR. ROY: *Your Honor is foreclosing us from calling the witness, then?*

THE COURT: *Yes, I am.* I say that is inadmissible as impeachment.

Is there anything further, then?

MR. ROY: Your Honor, what specific information was lacking from what Mr. Jenkins had, would Your Honor identify that?

THE COURT: Well, counsel, we can argue on this matter all day—

MR. ROY: I know, but I am entitled to it.

THE COURT: After the initial polygraph examination was taken these accountants, and according to all of the testimony, put together this package, made up their reports. You are not even able to tell me whether Mr. Jenkins had received an offense report on this matter or whether it was simply something that her counsel went down and said this is what she is accused of doing, this is all I have. That does not lend sufficient validity to an otherwise inadmissible, totally inadmissible polygraph. I have ruled and you can take it up. But, that is the basis upon which I am ruling, the testimony and the reports came at a much later time and it is quite apparent to the Court that Sergeant Nesary had a good deal more information that Mr. Jenkins could have had at that particular time.

MR. ROY: *Your Honor is foreclosing us from introducing evidence of—*

THE COURT: Well, if it is inadmissible, counsel, it is inadmissible.

(Italics ours.) The majority affirms this decision. I disagree with that conclusion because this entire matter arose during the prosecution's presentation of their case. A deficient offer of proof at that point merely foreclosed the defense from any further cross–examination of the witness; it should not have foreclosed defendant from offering the polygraph examination through Mr. Jenkins as a rebuttal witness in her case. Yet, here, during cross–examination in the State's case, the court ruled that defendant could not call Mr. Jenkins as a witness or present any further evidence of the unstipulated examination. In my view, this was error.

The majority's application of the general rule that polygraph examinations, absent a stipulation, are not admissible for any purpose is misapplied to the facts of this case. The authorities relied on by the majority all involve the question of whether a polygraph should be admitted in the first instance. In that situation, the rule operates to prevent admissibility unless the parties have stipulated that the

examination is admissible. Even then a trial judge is not without some discretion in allowing its admission. *See State v. Ross,* 7 Wn. App. 62, 497 P.2d 1343, 53 A.L.R.3d 997, *review denied,* 81 Wn.2d 1003 (1972). The basis for this general rule is the belief that the results of such examinations are unreliable. Here, we are not dealing with the first admission in evidence of a polygraph, but rather with an unstipulated examination offered as rebuttal to the results of a stipulated examination. In that factual situation, a different rule should be adopted.

It seems clear as a matter of logic that a mere stipulation to admit the result into evidence does not remove the scientific unreliability currently attached to polygraph examinations. The stipulation in effect waives this unreliability.[2] A cursory reading of the stipulation contained in. the clerk's

---

[2]Permitting the use of otherwise inadmissible evidence for the purpose of rebuttal is not unheard of in our courts. For example, the doctrine of curative admissibility, by analogy, offers support for the reasoning found in this dissenting opinion. 1 J. Wigmore, *Evidence* § 15 (3d ed. 1940), states the rules which have been applied under that doctrine:

Does one inadmissibility justify or excuse another? If the one party offers an inadmissible fact which is received, may the opponent afterwards offer similar facts whose only claim to admission is that they negative or explain or counter–balance the prior inadmissible fact?

If the opponent *duly objected* and was erroneously overruled in the first instance, he could not claim to present similar inadmissible facts, because his objection would (in theory) save him, on appeal, from any harm which may accrue, and he needs no other protection.

But if he *did not object* and except, he has no such protection; and the question thus arises whether he can protect himself at the trial by retorting in kind.

On this subject three different rules are found competing for recognition in the different jurisdictions.

(1) The first is that *the admission of an inadmissible fact, without objection by the opponent, does not justify the* opponent in rebutting by other inadmissible facts:.

. . .

This rule is represented by some English authority and by a respectable number of American jurisdictions.

(2) At the other extreme is a rule which declares that, in general, precisely the contrary shall obtain, *i.e.,* the *opponent may resort to similar inadmissible evidence;*

. . .

papers in the instant case fails to indicate any safeguards that would secure increased reliability of the result. In this case, the examination was given at the police station by a police sergeant in the employ of the State. It was this witness who testified to the prerequisites necessary to accord equal weight to an opposite opinion by Mr. Jenkins. Because of the court's ruling, we do not have Mr. Jenkins' view as to whether these prerequisites were in fact met by him or whether, in his opinion, they are even required. As I see it, any difference of opinion between these two experts on this matter would go to the weight of their opinions and should not be determined as a matter of law. The only preliminary determination for the court was whether (1) Mr.

---

This rule has also ample authority, and is perhaps to be regarded as the orthodox English rule.

(3) A third form of rule, intermediate between the other two, is that the opponent may reply with similar evidence *whenever it is needed for removing an unfair prejudice which might otherwise have ensued from the original evidence, but in no other case.*

(Some italics ours. Footnotes omitted.)

Washington appears to follow the second rule, allowing the opponent to resort to similar inadmissible evidence when inadmissible evidence has been introduced without objection. *Gillett v. Lydon*, 40 Wn.2d 915, 246 P.2d 1104 (1952). In *Gillett*, the defendant, while testifying as an adverse witness, made an unresponsive answer which opened up a collateral issue. The Washington Supreme Court upheld the trial judge's ruling which allowed the plaintiff to introduce testimony rebutting the defendant's answer. The court reasoned:

The voluntary enlargement of an answer to open the inquiry to matters possibly collateral, does not bar the right of attempted contradiction or impeachment, whenever it appears to the trial court that permission for such further inquiry is necessary to remove a plain and unfair prejudice which might otherwise inure from the original evidence. . . .

. . .

Under this rule, a party is not relegated solely to a motion to strike the voluntary unresponsive answer. If a witness chooses to make such an answer, he cannot do so secure in the knowledge that at most it will be stricken, and that he can in no event be contradicted or impeached . . .

*Gillett v. Lydon, supra* at 917–18.

Although the instant case is distinguishable from *Gillett*, in that it involves a polygraph that was stipulated to by both parties, the logic of the *Gillett* court is the same logic that the dissent propounds. That logic is that once the jury has heard inadmissible evidence, fairness dictates that the opposing party should have the opportunity to rebut that evidence.

Jenkins was qualified and (2) the examination was given under conditions that would result in an unbiased opinion by him. If these two conditions were met, the unstipulated polygraph examination should be admitted as rebuttal to the stipulated examination, and the weight to be given the respective opinions of the examiners should be for the trier of fact in the same manner as any other expert opinion.

Hence, I would remand this case to the trial court with direction to (1) determine if the defendant will call Mr. Jenkins as a rebuttal witness in the event a new trial is granted; and if so (2) take the testimony of Mr. Jenkins to determine if he is a qualified polygraph expert and that the conditions under which the examination was given were conducive to his rendering of an unbiased opinion of defendant's truthfulness concerning the charge. If these two questions are answered in the affirmative, I would grant the defendant a new trial.

Petition for rehearing denied October 27, 1978.

Review denied by Supreme Court February 16, 1979.