THE STATE OF WASHINGTON, *Respondent,* v. EUGENE STANLEY WILKES, *Appellant.*

*Richard L. Cease* and *Donald L. Westerman* of *Spokane County Public Defender Association,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Gregory G. Staeheli, Deputy,* for respondent.

FARIS, J.*—At about 9 p.m. July 31, 1976, the complainant, an 18–year–old woman, was approached as she arrived at her apartment by a man asking for directions. She assisted the man, first by walking with him to the vicinity about which he inquired and then by driving him to the area in her car. When their efforts to locate the address proved unsuccessful, the man asked to use the complainant's telephone. She allowed him to enter her apartment and make a call, during which he identified himself by the name Gene. At his request, the complainant then drove the man to a grocery store where he purchased six cans of beer. On their return, she permitted him to enter her apartment and use her phone for a second time.

After the second call, the man in the course of conversation with the complainant stated: that he was in the National Guard and had 16 years to go until retirement; he lived in a house in Spokane, Washington, located 8 blocks east of the Alberta and Wellesley intersection; he worked for the City of Spokane, fixing holes in the street; and he played the guitar and preferred country and western music.

The man thereafter raped the complainant. Immediately upon her escape she called the police, recounted to them the information summarized above, and described her assailant as a white male, 5 feet 10 inches tall, with blue eyes, and a smell as if he worked in garbage.

In the course of the investigation, an officer attempted to lift latent fingerprints from an ashtray, a pack of cigarettes, a telephone, and beer cans which the police had removed from the apartment. The officer did not preserve the lifted finger marks. At the time of the defendant's trial in November 1977, the officer no longer had a clear–cut recollection of the specific details of the finger marks. However,

---

*Judge Philip H. Faris is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

he testified that if the lifted finger marks had had sufficient characteristics to be used either to make an identification with other prints or to eliminate other prints, he would have retained them.

On February 17, 1977, the complainant viewed a photographic lineup which included a photograph of the defendant. She stated that the photo of the defendant was not that of the assailant, although it looked like him. Five months later, she contacted the police and told them that the photo of the defendant was, in fact, that of her assailant. She stated that she had been afraid to identify him earlier because she felt that a trial would result in her own prosecution before the jury by the defense.

The defendant was charged with the crime of rape and convicted by a jury in November 1977.

ISSUE: Should the trial court have dismissed the charges because the police had destroyed the lifted finger marks?

The defendant contends that the State's destruction of latent finger marks denied him due process in that he was deprived of an opportunity to have the finger marks examined by his expert and, perhaps, to produce expert testimony that those marks eliminated the defendant as the owner of the prints. He argues that there exists a reasonable possibility that the destroyed evidence was material and might have been favorable to him. We disagree.

 Failure of the State to disclose to the accused favorable, material evidence violates due process. *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). The duty of disclosure is operative as a duty of preservation. *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976); *Seattle v. Fettig,* 10 Wn. App. 773, 519 P.2d 1002 (1974). The United States Supreme Court has defined material evidence as evidence which creates a reasonable doubt which did not otherwise exist, and has stated that the destroyed or undisclosed evidence must be evaluated in the context of the entire record. *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976), applied in *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978).

In *Canaday,* the court noted at page 816 that "[m]ateriality within the scope of constitutional protection is determined not by speculation about whether the evidence may possibly yield favorable evidence at trial, but rather by the reality of the prejudice to the defendant caused by nondisclosure." The *Agurs/Canaday* standard is similar to that articulated in *State v. Wright, supra, i.e.,* in cases of this nature the courts are to be guided by the pragmatic balancing approach which requires a weighing of the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial.

Applying the *Agurs/Canaday* approach to the instant case, we conclude that the importance of the evidence lost is de minimis. The evidence of guilt adduced at trial was great. The complainant, who had never seen the defendant prior to the night in question, selected his picture from a photographic lineup and explained her earlier equivocation to the satisfaction of the jury. Moreover, the defendant fits the description and other information given to the police by the complainant immediately after the crime: his first name is Eugene; he is a member of the National Guard and at the time had 16 years' service until possible retirement; he is employed by the City of Spokane in the garbage collection department; he plays the guitar and prefers country and western music; and he lived in the area of Spokane described to the complainant by her assailant. Here, the circumstances are easily distinguishable from those found in *Wright,* where the destroyed evidence was the only direct evidence in the case.

On the other hand, even if the destroyed marks had contained sufficient ridge detail to distinguish them from the defendant's fingerprints, that evidence would not exculpate the defendant. It is certainly probable that other persons handled the pack of cigarettes, the beer cans, the ashtray and the telephone. The fact that defendant's prints could not be lifted from those articles would not establish that he had not been in the room and handled the articles.

Thus, this fact would not establish a reasonable doubt as to the defendant's guilt.

Consequently, the judgment of the Superior Court is affirmed.

GREEN, C.J., and ROE, J., concur.

Reconsideration denied October 30, 1979.

Review denied by Supreme Court January 18, 1980.