[No. 4580–II.   Division Two.   January 22, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. RUDOLPH WILLIAM RENFRO, *Appellant.*

*Timothy Fogh,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Joanne Y. Maida, Deputy,* for respondent.

PEARSON, J.—Defendant Rudolph William Renfro was convicted by a King County jury of the first degree murder of a prostitute. On appeal, he challenges three evidentiary

rulings and contends that the State failed to preserve evidence that may have been favorable to him. We find no error and affirm the conviction.

The scenario for this homicide began with the discovery of the victim's body in a hotel room. Strangulation was the cause of death. Sperm found in her vagina indicated that she had intercourse shortly before her death. In its investigation, the State did not attempt to identify the sperm type. Defendant argues that this omission constitutes an improper suppression of evidence.

Defendant was arrested several days after the crime. During his interview with Seattle detectives, he asked whether he was being accused of having "choked" or "raped" the victim, even though the police had not yet informed him of the circumstances of her death. These custodial statements were admitted at trial even though no CrR 3.5 hearing was held. The failure to hold such a hearing is asserted to be reversible error.

Other circumstantial and scientific evidence tended to connect defendant with the crime. Hairs on the bed sheet upon which the victim was found were microscopically similar to defendant's. Oil stains on the bed sheet were also consistent with those found on a towel the police seized from defendant. Kathy Chapman, assistant manager of the hotel, identified the towel as the one she had seen defendant wearing around his neck the morning of the murder. Also, defendant signed the hotel register that day, using an alias, and was given a key to the room where the victim was found. The key was found in his car after his arrest. Even though he had been given a key, defendant repeatedly had Ms. Chapman unlock the door to his room or give him a master key that night, after he had allegedly locked himself out of the room. The last time Ms. Chapman saw defendant prior to discovery of the murder he was sweating profusely.

In his own defense, defendant testified that he had dropped the victim off at the hotel with a man named "Earl" and then left to kill time. The victim was supposed to "run a scam" on Earl by "turning a trick" with him.

When defendant later returned to the room, the victim was dead.

Defendant volunteered to take a polygraph examination, and both he and the State stipulated to the admissibility of the results. The examination indicated that he was practicing deception when he denied killing the victim. The results of the polygraph examination were given to the jury and no instruction was offered or given with reference to the examination. Both the admission of the polygraph examination and the failure to give an explanatory instruction are urged as prejudicial error.

The State was allowed, over defendant's objection, to introduce evidence for impeachment purposes that defendant had a prior conviction for the crime of rape. This ruling is challenged on appeal notwithstanding the fact that on direct examination defendant attempted to excuse his failure to report the victim's death and his repeated lies to the police by arguing that he feared his probation for the prior conviction would be revoked.

### SUPPRESSION OF EVIDENCE

Were defendant's due process rights violated by the failure of the State to attempt to determine the sperm type found in the victim's vagina?

As a general rule, the State has a duty to *disclose* and *preserve* evidence whenever there is a reasonable possibility that the evidence is material and favorable to defendant. Failure to do so denies an accused his due process right to a fair trial. *State v. Canaday,* 90 Wn.2d 808, 585 P.2d 1185 (1978); *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976).

> This rule, however, has not been interpreted to require police or other investigators to search for exculpatory evidence, conduct tests, or exhaustively pursue every angle on a case.

*State v. Hall,* 22 Wn. App. 862, 866–67, 593 P.2d 554 (1979). In order for a violation of due process to occur under *State v. Wright, supra,* defendant must either have

(1) requested disclosure, or shown that the evidence was destroyed; or (2) borne the burden of showing a reasonable possibility that the evidence was material and favorable to defendant. *State v. Ervin,* 22 Wn. App. 898, 594 P.2d 934 (1979); *State v. Weygandt,* 20 Wn. App. 599, 581 P.2d 1376 (1978).

Materiality within the scope of constitutional protection is determined not by speculation about whether the evidence may possibly be favorable, but rather by the reality of prejudice to defendant caused by nondisclosure. *State v. Canaday, supra.* Where no request for disclosure has been made, constitutionally material evidence is evidence creating a reasonable doubt that did not otherwise exist. *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976).

Applying these rules to this case, we conclude there was no violation of defendant's due process rights. No request was made for the taking or disclosure of tests on the semen, nor has there been any allegation that the tests were made and destroyed. Defendant's main contention is that the State had an affirmative duty to conduct such tests. We disagreed with a similar contention in *State v. Hall, supra.* But assuming arguendo such a duty might exist, we do not believe the "reasonable possibility" standard of *Wright* has been satisfied. The presence of semen dissimilar to defendant's would not be probative of his guilt or innocence of the crime of murder. It would, of course, be probative of whether he was the last person to have intercourse with the victim prior to her death. It would not, however, establish his absence from the crime scene at the time the victim was killed. Other evidence, including defendant's own admissions, placed him at the crime scene. *Cf. State v. Wilkes,* 24 Wn. App. 381, 600 P.2d 1305 (1979); *State v. Bernhardt,* 20 Wn. App. 244, 579 P.2d 1344 (1978).

Of course, we can only speculate that tests of the semen in the victim's vagina might have been favorable to him. When balanced against the extensive evidence inculpating defendant with this crime, this speculation does not rise to

the "reasonable possibility" standard of *State v. Wright, supra.*

### Failure To Conduct a CrR 3.5 Hearing

■■ Defendant contends that he was denied due process because of the trial court's failure to hold a CrR 3.5 hearing regarding the admissibility of his custodial statements. While CrR 3.5 hearings are mandatory where the State seeks to use custodial statements of defendant, the failure to hold such a hearing is not prejudicial if the statements are voluntary and made after defendant has been properly advised of his constitutional rights. *State v. Vandiver,* 21 Wn. App. 269, 584 P.2d 978 (1978). The reviewing court may examine the record to see whether the statements were voluntary and made by defendant with full knowledge of his constitutional rights. *State v. Mustain,* 21 Wn. App. 39, 584 P.2d 405 (1978). A custodial statement is voluntary if it is not the product of duress, coercion, promise, or inducements of any kind. *State v. McKeown,* 23 Wn. App. 582, 596 P.2d 1100 (1979).

Our review of the record discloses that defendant made the custodial statements voluntarily after he was properly advised of his constitutional rights. Both defendant and his counsel acknowledge that he voluntarily waived his right against self–incrimination. Furthermore, at the request of defense counsel, the parties stipulated to a waiver of all pretrial hearings, including the omnibus hearing.

### Admission of the Polygraph Results

Defendant contends the trial court erred in admitting the results of the polygraph examination because (1) no specific limiting instructions were given; (2) the evidence was not used merely to corroborate evidence of guilt; and (3) polygraph examination results are inadmissible regardless of the stipulation.

■ The general rule is that where the parties have stipulated the results of a polygraph examination of a defendant, the trial judge should instruct the jury that (1) the

examination does not tend to prove or disprove any element of the crime charged, but at most tends to indicate only that at the time of the examination defendant was not telling the truth; and (2) that it is for the jury to determine what corroborative weight and effect such testimony should be given. *State v. Ross,* 7 Wn. App. 62, 497 P.2d 1343, 53 A.L.R.3d 997 (1972); *State v. Valdez,* 91 Ariz. 274, 371 P.2d 894 (1962). However, no error can be predicated on the failure of the trial court to give an instruction when no request is made unless the instruction is necessary to provide minimum standards of due process. *State v. McHenry,* 88 Wn.2d 211, 558 P.2d 188 (1977); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976). An evidentiary instruction on the use of a polygraph examination does not in our opinion rise to the necessary constitutional magnitude, since the limitations of its usefulness may be highlighted by cross–examination and by argument. *Cf. State v. McHenry, supra. But see State v. Valdez, supra.*

But even assuming error in the failure of the court to give such an instruction sua sponte, such failure does not constitute reversible error where the State has introduced evidence sufficient for the jury to have convicted defendant, even absent the polygraph examiner's testimony. *State v. Trotter,* 110 Ariz. 61, 514 P.2d 1249 (1973). There is sufficient evidence here, when viewing the evidence favorably to the State, that any rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). For this same reason, the polygraph results were merely corroborative evidence of guilt.

Defendant cites cases from other jurisdictions in support of his contention that polygraph examination results are inadmissible notwithstanding a stipulation. However, in Washington several decisions have suggested that such evidence may be admissible even absent stipulation, provided the trial record adequately sets forth certain information regarding the reliability of the examination and the examiner's qualifications. *See, e.g., State v. Young,*

87 Wn.2d 129, 550 P.2d 1 (1976); *State v. Pleasant*, 21 Wn. App. 177, 583 P.2d 680 (1978); *State v. Woo*, 84 Wn.2d 472, 527 P.2d 271 (1974). The stipulation, in effect, waives proof of the unreliability of the examination. *Cf. State v. Boileau*, 21 Wn. App. 259, 267, 584 P.2d 473 (1978) (dissenting opinion).

## IMPEACHMENT BY PRIOR CONVICTION

Defendant claims that under ER 609(a)(1), admission of evidence of his prior conviction for rape constituted prejudicial error because (1) rape is a crime of an assaultive nature, having little or no probative value on the issue of his veracity; (2) the crimes are similar and therefore admission of evidence of defendant's prior conviction has a highly prejudicial effect to the defendant; and (3) defendant's credibility is the key to the State's case.

We agree that crimes of an assaultive nature usually have slight probative value of veracity. *Gordon v. United States*, 383 F.2d 936 (D.C. Cir. 1967). However, such crimes do have some probative value which, under the rule, must be balanced against their prejudicial effect. It also seems obvious that when the crime parallels that for which a defendant witness is being tried, the quantum of prejudice to defendant is magnified. *United States v. Puco*, 453 F.2d 539 (2d Cir. 1971).

We also recognize some validity in the argument that where defendant's credibility is a key factor in a determination of guilt or innocence, evidence of a prior conviction has a greater prejudicial effect, and there appears to be disagreement in the cases as to whether this factor should be controlling on the issue of its admissibility. *United States v. Jackson*, 405 F. Supp. 938 (E.D.N.Y. 1975). *Contra, United States v. Brown*, 409 F. Supp. 890 (W.D.N.Y. 1976).

 In this case, however, we do not conclude that the trial court abused its discretion in allowing the evidence to come in, since defendant raised the issue of his probationary status during direct examination. A criminal defendant

may be cross–examined regarding prior convictions where he has raised the issue. *State v. Hultenschmidt,* 87 Wn.2d 212, 550 P.2d 1155 (1976). Although defendant did not testify on direct examination as to the nature of the crime, he did use the fact of his probationary status as an excuse for not notifying the police of the victim's death. In these circumstances, it was appropriate for the State to probe the strength of the excuse offered.[1]

Finally, defendant contends the trial court commented on the evidence in violation of article 4, section 16 of the Washington State Constitution. In ruling on an objection during the State's opening statement, the trial judge stated: "The objection is going to be sustained to the preceding comment regarding threats. The jury will be instructed to disregard that statement." This ruling by the court did not constitute an impermissible comment. A trial judge has commented on the evidence if he or she has conveyed to the jury his or her personal opinion regarding the truth or falsity of any evidence introduced at trial. *State v. Bogner,* 62 Wn.2d 247, 382 P.2d 254 (1963). A ruling such as was made here is not a comment on the evidence.

Judgment affirmed.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied February 27, 1981.

Review granted by Supreme Court May 8, 1981.

---

[1]We also note there was no objection to the State's question concerning defendant's prior conviction.