[No. 5611–1.  Division One.  June 8, 1978.]

THE STATE OF WASHINGTON, *Respondent*, v. CARLA JEAN ENGESETH SCRIVER, *Appellant*.

*James D. Sherman* of *Snohomish County Public Defender,* for appellant.

*Robert E. Schillberg, Prosecuting Attorney,* for respondent.

CALLOW, J.—The defendant, Carla Jean Engeseth Scriver, was convicted in a trial to the court of possession of a controlled substance. She appeals.

On March 28, 1975, two young women were detained on suspicion of shoplifting at a Pay 'N Save store located in Everett, Washington. Upon checking their purses, the store detective discovered pills suspected of being controlled substances and called the police. An officer of the Everett Police Department arrived, took possession of the pills, and placed the two young women in custody. At that time, the store detective identified the one in whose purse the pills were found to the officer as Carla Jean Engeseth. The other young woman was a juvenile. The officer booked Carla Jean Engeseth for shoplifting and for possession of a controlled substance, and turned the pills in question over to the property officer at the Everett Police Department.

At the trial the store detective was unable to identify the defendant, Carla Jean Engeseth Scriver, and the police officer vaguely recognized the defendant as the woman he booked for possession of a controlled substance. However, the officer was able to remember the defendant as related to the specific incident and as distinct from the juvenile who did not possess any of the controlled substances. The court found that the officer "could not positively identify the defendant at trial." Various witnesses established a chain of custody for the two red capsules taken from the purse of the defendant. A criminalist with the Washington State Crime Laboratory obtained the sealed package containing the two red capsules from the vault for analysis. The trial court found:

> The proceedings generally followed by those agencies were reasonably adequate to prevent either intentional tampering or simple mistakes with respect to preserving the evidence in connection with defendant's case.

On April 4, 1975, the criminalist subjected the two red capsules containing orange powder to certain tests and concluded that the capsules contained a controlled substance.

On October 28, 1975, the two red capsules in question were destroyed by agents of the Washington State Board of Pharmacies on behalf of the Everett Police Department, but without any knowledge or authority of the Snohomish County prosecuting attorney's office. There was a pretrial determination that the destruction was intentional and that no charges were pending at the time the capsules were destroyed. No showing was made that the destruction was with the consent or knowledge of the woman originally arrested under the name Carla Jean Engeseth, or any attorney representing or acting in her behalf.

On January 28, 1976, the following documents were executed: (1) Memorandum of Understanding for Pre–Prosecution Diversion Program, and (2) Diversion Agreement. The former document was signed by Carla J. Scriver, defendant, her private attorney, and a deputy prosecuting attorney. There was no showing that the destruction of the

two pills on October 28, 1975, was known to the signators of the diversion documents.

At the time of executing the diversion agreement, the defendant executed a confession. The confession stated in part:

I make the following confession after consulting with my attorney and upon the advice of my attorney, with full knowledge that I have the right to make no statement whatever regarding this or any criminal charge;

That the following confession is given freely and voluntarily;

Another girl and I were in the uptown Pay 'n Save store. The other girl picked up a lip gloss and so did I. We left the store and upon reaching the outside a number of the employees of Pay 'n Save stopped us. They took us into the back room and searched our purses and found mescaline in my wallet. They then called the police.

[Signed] CARLA J. SCRIVER
Defendant

The notary public testified during the trial that she was a legal secretary and notary public in the law offices where the defendant's trial counsel is an associate. She testified that the defendant, whose maiden name was Carla Jean Engeseth, was a client of her employer; that the defendant had come to her employer's office by prior arrangement, had responded to the request made in the reception room for Ms. Scriver, and that the woman had narrated the events in question to her. The notary public testified that she then typed the confession for the defendant's review and signature, and notarized the defendant's signature. At trial the notary public indicated that although she remembered the incident and the name of the client, she could not remember her face.

On November 23, 1976, following the defendant's violation of the diversion agreement, charges were filed against her in superior court. On January 14, 1977, the defendant, through her new attorney, made her first request for inspection or analysis of the capsules. The request was

granted. On or about February 7, 1977, the deputy prosecuting attorney informed defense counsel that the capsules had been destroyed and were not available. Thereafter, the defendant moved to dismiss the information, alleging that destruction of the evidence had violated her right to due process of law. The motion was denied. The court ruled that the defendant had not made a timely demand for inspection of the substance, had entered into the Pre-Prosecution Diversion Program upon the advice of counsel without requesting an inspection of the substance, and therefore had not been denied due process of law by the intervening intentional but good faith destruction of the substance.

The case was tried to the court, sitting without a jury. The confession was admitted into evidence over the defendant's objections that there was no showing of relevancy and that the foundation questions propounded by the court called for hearsay testimony. From an examination of the superior court file, the court noted that there had been an arraignment in the case on December 6, 1976, and that the person appearing for the arraignment answered to whether this was her true name as charged, "Carla Jean Engeseth Scriver." The trial court thus found the defendant's true name to be Carla Jean Engeseth Scriver. The court then found that she was in fact the person who appeared before the notary public and who signed the name Carla J. Scriver to the statement typed and notarized by the notary public. The court concluded that the defendant was Carla Jean Engeseth Scriver and that she possessed a controlled substance in Snohomish County on March 28, 1975.

The defendant raises the following questions on appeal:

1. Was the defendant denied due process of law as a result of the intentional destruction of the capsules?

2. Were the written admissions by the defendant irrelevant and therefore inadmissible?

3. Was the consideration by the trial court of the superior court file as evidence wrongful because such consideration (a) considered hearsay evidence, (b) deprived the defendant of the right to confront witnesses against her, (c) denied the right to effective counsel, and (d) denied the defendant the right to due process?

4. Was there insufficient evidence upon which to base a finding of guilty?

### THE DESTRUCTION OF THE DRUG DID NOT VIOLATE DUE PROCESS

The defendant argues that the destroyed capsules comprise the basis for the charge, and without testimony as to the content of the capsules there is no case against her. We agree with the argument that it was essential that there be proof that the capsules were a controlled substance, but find that such proof was presented and that no showing was made that the defendant was harmed by the unavailability of the physical evidence.

■ When independent evidence has established the commission of a crime, then the defendant's confession may be considered together with the other evidence presented to support a finding of guilt beyond a reasonable doubt. There must be independent evidence of the corpus delicti of the crime of possession of a controlled substance by someone before a confession may be introduced. *State v. Zuercher,* 11 Wn. App. 91, 521 P.2d 1184 (1974). As stated in *State v. Hamrick,* 19 Wn. App. 417, 418–19, 576 P.2d 912 (1978):

> Proof of the corpus delicti of any crime requires evidence that the crime charged has been committed by someone. . . .
>
> It is clear that admissions of a defendant play a limited role in establishing the corpus delicti. The corpus delicti must be shown by some independent evidence before the admissions of the defendant may be utilized, but when such independent evidence is adduced, the admission may be considered in combination with the other facts to establish the defendant's guilt beyond a reasonable doubt. The independent evidence is sufficient if it prima facie establishes the corpus delicti. . . . "Prima facie" in

this context means only that there must be evidence of sufficient circumstances which would support a logical and reasonable deduction of the fact sought to be proved. (Footnote omitted.)

■■ The elements of the offense under RCW 69.50.401 are (1) possession of a controlled substance (2) with the intent to possess it. *State v. Smith,* 17 Wn. App. 231, 562 P.2d 659 (1977). The evidence of the results of the testing done in the crime laboratory which showed that the substance was a controlled substance as defined by the statute, when taken with the identification of the defendant as the person who possessed that substance, was sufficient to establish the corpus delicti and allow the admission of the confession. We recognize that the evidence on these questions could have been stronger. However, the proof presented supports the reasonable deduction that the defendant unlawfully possessed a controlled substance when arrested. The independent evidence was sufficient to establish a prima facie case.

■ We find *State v. Wright,* 87 Wn.2d 783, 786, 557 P.2d 1 (1976), adopting the reasoning of *Brady v. Maryland,* 373 U.S. 83, 87, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), which said:

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

Further, the *Wright* opinion, quoting from *United States v. Bryant,* 439 F.2d 642, 651 (D.C. Cir. 1971), stated at page 789:

In order to render the duty to disclose an effective obligation, . . . "before a request for discovery has been made, *the duty of disclosure is operative as a duty of preservation.*"

In *Wright* the evidence was destroyed within a few days after it was found; the destruction took place while the defendant was in custody and unrepresented by counsel.

The opinion held that "before any testing or disposition of evidence occurs, the defendant should be given notice of the type of evidence involved and its planned disposition." *State v. Wright, supra* at 793. The police and prosecutor have an obligation to preserve all evidence material in a criminal case until the defendant has been given reasonable notice that they intend to destroy it or otherwise cease to preserve it. If this is not possible, or the defendant is not yet represented by counsel, they must petition the court as to its disposition. *State v. Wright, supra.* The actions of the police in destroying the evidence here without any notice to the defendant violated this rule.

We conclude, however, that the failure of the police to give notice to the defendant in this case did not prejudice her, and that she had waived the materiality of the preservation of the capsules as evidence. *Brady v. Maryland, supra,* indicates three criteria to be used in determining whether the suppression of evidence has violated the constitutional rights of an accused: (1) Did the defendant request disclosure? (2) Was the evidence material to the issue of guilt or punishment? (3) Was the evidence favorable to the accused?

*State v. Wright* calls for a determination of whether or not there was a "reasonable possibility" that the destroyed evidence would be favorable to the defendant. Here the defendant does not challenge the content of the "confession," but only denies that she was the "Carla J. Scriver" that signed it. The findings of the trial court that Carla Jean Engeseth Scriver was the person arrested, the person who executed the confession, and the defendant present in court, negates the defendant's claim that she is prejudiced by the destruction of the capsules. She had admitted that a drug was found in her wallet, from the testimony of a criminalist for the Washington State Crime Laboratory it was a drug listed in Schedule I of RCW 69.50.204, and she cannot now claim that the availability of the drug at the trial would have raised a reasonable possibility that the drug was not a controlled substance under the statute.

█ Further, the defendant did not request disclosure until after she had been charged with the crime many months following her arrest, and after she had signed the "diversion" documents and the confession. She had waived her right to examination of the capsules by her acknowledgment of their contents.

█ In deciding whether sanctions should be imposed for the destruction of evidence, trial and appellate courts are to be guided by a pragmatic balancing requiring a weighing of (a) the degree of negligence or bad faith involved; (b) the importance of the evidence lost; and (c) the evidence of guilt adduced at trial.

In applying this standard in the area of mechanical or scientific testing, evidence should be presented casting doubt upon the reliability of the determination besides the possibility of mechanical defect or failure. This standard is outlined in *State v. Michener,* 25 Ore. App. 523, 550 P.2d 449 (1976), and *State v. Reaves,* 25 Ore. App. 745, 550 P.2d 1403 (1976), which involved driving while intoxicated. In *Michener* the court stated that evidence must be produced when a defendant can establish "some reasonable possibility, based on concrete evidence rather than a fertile imagination, that [the breathalyzer ampule] would be favorable to his cause." *State v. Michener, supra* at 532. The court found this concrete evidence in the form of video tapes of the defendants which showed them acting normally. In *Reaves* the court applied the same standard to remand for a new trial requiring the trial judge to listen to additional testimony offered by defendant to show that he was not acting in a drunken manner. If the new testimony was sufficient to raise a question about the accuracy of the breathalyzer test, its results would be excluded. In *Seattle v. Fettig,* 10 Wn. App. 773, 519 P.2d 1002 (1974), a conviction for driving under the influence was reversed where a municipal court judge who had seen the subsequently destroyed video tape of defendant after his arrest, testified as to its favorability to the defendant. The opinion states that the crucial question is whether the evidence destroyed

was material and favorable to the defendant. Here, the defendant has not made any showing that the tests of the Washington State Crime Laboratory should be suspect. On cross–examination of the laboratory technician who performed the tests, the defendant could find no fault in the way they were performed. Thus, the defendant cannot establish a reasonable possibility that the evidence would be favorable to her if it had been preserved. The violation of her due process rights was not prejudicial. We find that neither negligence nor bad faith was involved in the actions of the prosecution, that there is no showing that the testimony of the state criminalist was questionable, and that all the evidence adduced at trial supports the finding of guilt. We hold that sanctions should not be imposed for the destruction of the evidence under the circumstances before us.

### THE WRITTEN ADMISSIONS BY THE DEFENDANT WERE RELEVANT

■ The defendant contends that there is nothing to show a connection between her and the confession admitted as an exhibit. The arresting officer, however, stated that he vaguely recognized the defendant. While this testimony is far from certain, it was said in *State v. Spadoni,* 137 Wash. 684, 691, 243 P. 854 (1926):

> Uncertainty in this respect affects only the weight of the evidence, not its admissibility, and certainly it has some bearing on the question whether the accused was guilty of the crime to show that the person committing it was of his general appearance, or to show that a person of his general appearance was seen in the vicinity of the place of the crime immediately prior to its commission.

The trial court considered this uncertainty in making its finding of fact that the police officer could not positively identify the defendant at trial. The notary public who typed and notarized the confession, however, stated that the person who filled out the confession responded to the name "Ms. Scriver," and further signed the confession as "Carla J. Scriver." The identity of the defendant as the

person arrested and the person who signed the confession was relevant both to link the defendant to the drugs and to establish that the capsules found in her purse were drugs. The existence of the confession and the statements it contained were proof of the elements of the crime and linked those elements one to the other. It was within the discretion of the trial court to rule that the confession was relevant. *Lamborn v. Phillips Pac. Chem. Co.*, 89 Wn.2d 701, 706, 575 P.2d 215 (1978).

## THE SUPERIOR COURT FILE COULD BE CONSIDERED AS A BUSINESS RECORD

▉▉ The trial judge reviewed the superior court file, noted that a "Carla Jean Engeseth Scriver" had appeared for arraignment, and stated that the defendant answered to that name as the named person charged. The defendant complains that the written record in the court file reflecting the earlier proceedings was hearsay. This does not preclude the court's taking judicial notice of that which is contained in the file of the cause. *American Universal Ins. Co. v. Ranson*, 59 Wn.2d 811, 370 P.2d 867 (1962); *Swak v. Department of Labor & Indus.*, 40 Wn.2d 51, 240 P.2d 560 (1952). Since the minute entry in the court file was part of the record in the cause presently before it, the court was entitled to take judicial notice thereof. 5 R. Meisenholder, Wash Prac. § 594 (1965).[1] Further, the judicial notice taken of such records does not deprive a defendant of the right to confront witnesses. *United States v. Rogers*, 454 F.2d 601 (7th Cir. 1971); *United States v. Thompson*, 420 F.2d 536 (3d Cir. 1970). Finally, the defendant's assertion that the noticing of the record in the case deprived her of the effective assistance of counsel is not supported by authority and therefore cannot be considered on appeal. *State v. Partin*, 88 Wn.2d 899, 567 P.2d 1136 (1977).

---

[1]Under RCW 5.44.010, court records are admissible in evidence when duly authenticated. The statute negates other grounds of objection to admissibility. *See Grant v. Fisher Flouring Mills Co.*, 190 Wash. 356, 68 P.2d 210 (1937); *State v. Johnson*, 122 Wash. 394, 210 P. 774 (1922). *Compare* the foregoing cases, which pertain to public records, *with State v. Kreck*, 86 Wn.2d 112, 542 P.2d 782 (1975),

## THE EVIDENCE WAS SUFFICIENT TO SUPPORT A
## FINDING OF GUILTY

We hold that sufficient evidence was admitted to support a finding of guilty. *State v. Kreck, supra.*

The judgment is affirmed.

JAMES and DORE, JJ., concur.

Reconsideration denied August 22, 1978.

Review denied by Supreme Court January 19, 1979.

---

and *State v. White,* 72 Wn.2d 524, 433 P.2d 682 (1967), which construe RCW 5.45.020 of the Uniform Business Records as Evidence Act.