[No. 5832–1. Division One. March 19, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. THELBERT
LEE ERVIN, *Appellant.*

---

[13]*DeHeer v. Seattle Post–Intelligencer,* 60 Wn.2d 122, 126, 372 P.2d 193 (1962); *Krause v. McIntosh,* 17 Wn. App. 297, 304, 562 P.2d 662 (1977).

*Byron H. Ward,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Gregory P. Canova, Deputy,* for respondent.

CALLOW, C.J.—The defendant, Thelbert Lee Ervin, was convicted of first–degree murder and first–degree burglary. He urges reversal of the conviction, claiming that his rights to due process were violated when a prosecution witness failed to reveal information possibly helpful to him.

On July 9, 1973, the defendant assaulted 81–year–old Raymond Prescott while burglarizing Prescott's apartment. The defendant escaped and Prescott was admitted to the intensive care unit in Harborview Hospital. At the time of

his admission Prescott had seven fractured ribs. While in the hospital Prescott died of pneumonia, which according to the medical testimony was caused in large part because of the rib fractures.

Several years later, the defendant discovered that a warrant for his arrest had been issued and he turned himself in. An information was filed charging him with murder in the first degree (RCW 9.48.030) and burglary in the first degree (RCW 9.19.010).

The defendant admitted during the trial that he struck Prescott two or three times while stealing a television set from Prescott's apartment. He testified that because Prescott would not quiet down he hit him once or twice more in the stomach. The defendant denied during cross–examination that he hit or kicked the deceased in the back.

Because of the defendant's admissions, a major part of the prosecution's case consisted of establishing a causal connection between Prescott's death and the defendant's criminal conduct. As a preliminary matter, the State offered a photograph taken of Prescott at the autopsy. The prosecuting attorney explained:

> The doctor indicated it would be very useful, and it will demonstrate the massive bruising on the back, not shown on any of the other autopsy reports, and part of the basis for this conclusion of the cause of death.

This statement was made out of the jury's presence. The exhibit was admitted into evidence.

For purposes of establishing the cause of death, the State called Dr. J. Bruce Beckwith. Dr. Beckwith, as a deputy medical examiner for King County, had performed the autopsy. The autopsy revealed a 6– by 3–inch bruise on Prescott's back, a scraped elbow, deep cuts in the upper lip, a large bruise in the muscle of the scalp on the left side, two short tears of kidney tissue, and multiple rib fractures. Dr. Beckwith identified the photograph of Prescott's body, and pointed out the sizable lumbar bruise on the left side of Prescott's back. The State also had the doctor draw a

diagram on which he indicated and labeled Prescott's injuries, including the bruise.

Dr. Beckwith testified that hypostatic pneumonia was the immediate cause of Prescott's death. Hypostatic pneumonia was stated to be caused by the combination of an inability to breathe deeply and effectively and an inability to change positions frequently in order to avoid the settling of secretions and fluids in the lungs. Dr. Beckwith further testified that the multiple rib fractures received by Prescott were the reasonable cause of his inability to breathe effectively and change positions, thus predisposing Prescott to terminal pneumonia.

The defense called Dr. Frederick J. Fox, Prescott's treating physician at the hospital. Dr. Fox testified that Prescott was transferred out of intensive care at Prescott's request and upon a psychiatrist's inability to determine Prescott's competency due to his failure to cooperate. Dr. Fox stated that although Prescott's death was due to many factors, the ultimate cause of death was hypostatic pneumonia. Dr. Fox could not state the exact cause of the pneumonia, but he did note that it was normal practice to rotate a patient, which would be made difficult if there was a rib injury and if the patient was uncooperative. Dr. Fox also testified that it would be difficult to say that the initial assault did not contribute to the lung problems, but that the possibility of other contributory factors could not be denied.

A third doctor, Dr. Leonard Hudson, was called by the defense. Dr. Hudson, the attending physician at the time Prescott was in the intensive care unit, testified that the psychiatrist's report indicated Prescott had made a rational and, impliedly, competent decision to die. Dr. Hudson also stated that the records indicated there was some improvement in Prescott's pneumonia after he was transferred out of intensive care, but that the condition worsened 5 days later—the day following the fluid depletion. The fluid depletion might have exacerbated the pneumonia, he stated. Dr. Hudson concluded that the cause of death was pneumonia, which initially could have been the result of

the fractured ribs, but that it was difficult to establish a direct relationship between the two.

At no time during the trial was medical testimony presented to the jury that the lumbar bruise was a significant or even contributing factor to Prescott's death. The prosecutor made the following statements during closing argument:

> Now, how do you get from the injuries to the death? You recall Doctor Beckwith's testimony . . . about the nature and extent of the injuries suffered by the deceased in this case at the time of the assault. Remember the large bruises, six inches by three inches on the back.
>
> You can see those more graphically illustrated in State's Exhibit 1, a photograph taken at the time—
>
> . . .
>
> . . . What put Raymond Prescott in the intensive care unit at Harborview Medical Center? . . . It was the brutal beating that he received the morning of July 9, 1973, when seven of his ribs were broken, when he received extensive bruises to several parts of his body, his head, and his back, most notably.
>
> . . .
>
> Now, ladies and gentlemen, for you to find the defendant not guilty of murder in the first degree, you will have to find—and you will have to believe that there's a reasonable doubt about whether or not a beating—the brutal beating—the fractured ribs—seven of them—the bruising—you'll have to have a reasonable doubt about whether or not that was a proximate cause of Mr. Prescott's death.

The jury found the defendant guilty on both counts. In argument on the motion for new trial, the defendant's attorney stated that he had learned that the 6– by 3–inch bruise occurred after the decedent's admission to the hospital. In arguing this motion for a new trial, defense counsel stated that Dr. Beckwith was of the opinion that the bruise had occurred during the deceased's hospitalization. The defense counsel had not questioned Dr. Beckwith about the bruise during the trial. Defense counsel contended that Dr. Beckwith, as acting medical examiner, was constitutionally

obligated to reveal all material and possibly helpful information to the accused, and that he had violated this obligation.

In passing upon the defendant's motion, the court considered a letter from Dr. Beckwith that stated he would have testified that the bruise was probably sustained during hospitalization. However, he could not rule out the possibility that Prescott had bled into an older bruise and obscured the latter. Whatever the age of the bruise, Dr. Beckwith felt that it was of extremely minor significance and that the key injury was the rib fractures. Dr. Beckwith noted that the bruise did not kill Prescott or contribute importantly to his clinical course. The motion for a new trial was denied, the court finding that the date of the bruise was immaterial and would not have affected the jury's finding with respect to the proximate cause of death. The defendant appeals.

The sole issue presented is whether Dr. Beckwith was obligated, under the circumstances, to reveal his opinion concerning the date of the lumbar bruise.

The defendant claims that Dr. Beckwith failed to disclose material evidence in his possession favorable to the defendant on the issue of guilt, and that his failure is attributable to the prosecuting attorney. To support his claim the defendant cites CrR 4.7(a)(3), (4), CrR 4.7(h)(2),[1] and *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), which held that the due process clause of the Fourteenth Amendment was violated when the prosecution failed to disclose evidence "which, if made available, would tend to exculpate [the accused] or reduce the penalty." *Brady v. Maryland, supra* at 87–88. Negligence or even good faith is immaterial to this issue since the focus is on the rights of the accused. *Brady v. Maryland, supra; Seattle v. Fettig,* 10 Wn. App. 773, 519 P.2d 1002 (1974).

---

[1] CrR 4.7(a)(3) and (4) state:

(3) Except as is otherwise provided as to protective orders, the prosecuting attorney shall disclose to defendant's counsel any material or information

Further, a conviction need not be set aside unless the prosecution has failed to disclose evidence which is of sufficient significance to amount to a denial of the right to a fair trial. *United States v. Agurs,* 427 U.S. 97, 109, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976).

Dr. Beckwith, at the time of trial, had not been employed as a county medical examiner for some 3 years. Assuming only for the sake of argument that Dr. Beckwith's knowledge was imputable to the prosecuting attorney, *see State v. Wright,* 87 Wn.2d 783, 790 n.4, 557 P.2d 1 (1976), three criteria must be affirmatively met before it can be said that the failure to disclose evidence violated the accused's constitutional rights. These are:

> (1) Did the defendant request disclosure? (2) Was the evidence material to the issue of guilt or punishment? (3) Was the evidence favorable to the accused?

*State v. Scriver,* 20 Wn. App. 388, 396, 580 P.2d 265 (1978). The record does not indicate that a pretrial request for disclosure was made by the defendant. Furthermore, the defense made no efforts to determine the date or nature of the bruise during trial. While prosecutors may not suppress material evidence, neither are they under a duty to disclose on their own initiative all they know of the case and their witnesses. As stated in *United States v. Agurs, supra* at 112–13:

> within his knowledge which tends to negate defendant's guilt as to the offense charged.
>
> (4) The prosecuting attorney's obligation under this section is limited to material and information within the knowledge, possession or control of members of his staff.
>
> These provisions were included in order to satisfy the requirements of *Brady v. Maryland,* 373 U.S. 83, 87–88, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). *Criminal Rules Task Force to the Washington Judicial Council, Washington Proposed Rules of Criminal Procedure* (1971), comment to rule 4.7, at page 70.
>
> CrR 4.7(h)(2) states:
>
> (2) *Continuing duty to disclose.* If, after compliance with these standards or orders pursuant thereto, a party discovers additional material or information which is subject to disclosure, he shall promptly notify the other party or his counsel of the existence of such additional material, and if the additional material or information is discovered during trial, the court shall also be notified.

[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. . . . [T]he omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

(Footnote omitted.) Under these circumstances, it cannot be said that the defendant was denied a fair trial. *State v. Scriver, supra; In re Lessard,* 62 Cal. 2d 497, 399 P.2d 39, 42 Cal. Rptr. 583 (1965). The defendant's failure to inquire about the cause of the bruise during the trial precludes the granting of a new trial on the ground of newly discovered evidence. A defendant is not denied a fair trial when that which could have been discovered during the trial is not grasped but only finally comprehended after the trial is concluded. *State v. Canaday,* 79 Wn.2d 647, 665–66, 488 P.2d 1064 (1971); *State v. Hobbs,* 13 Wn. App. 866, 869, 538 P.2d 838 (1975).

CrR 4.7(a)(3), (4), and CrR 4.7(h)(2) require that the material to be disclosed tend to "negate defendant's guilt as to the offense charged." It is true that the prosecutor's statements might have led the jury to consider that the fractures occurred at the same time as the bruise; it is equally true that the defendant's admissions that he hit Mr. Prescott several times supplied the necessary inference that the defendant caused the broken ribs. The trial court determined that the date of the bruise was immaterial. We agree. The evidence was sufficient to support the conclusion that the injuries inflicted by the defendant were the cause of the death of the victim.

The judgment is affirmed.

SWANSON and WILLIAMS, JJ., concur.

Reconsideration denied April 30, 1979.

Review denied by Supreme Court July 20, 1979.