[No. 8554–9–I.   Division One.   June 15, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL
LEWIS BOYD, *Appellant.*

*Brett, Brinn, Daugert & Erickson* and *Dean Brett,* for
appellant.

*David S. McEachran, Prosecuting Attorney,* and *Charles
Tull, Deputy,* for respondent.

JAMES, C.J.—Dan Boyd appeals his conviction for eluding a police officer, alleging failure by the police to preserve evidence material to his defense. We reverse.

Boyd testified[1] that as he and a friend were leaving the parking lot of the Coconut Grove, a Bellingham tavern, at about 1:30 a.m. on September 25, 1979, a Chevrolet Camaro spun several rocks at his car. The rocks struck Boyd's car, a silver Corvette with license number IZX 087. Boyd followed the Camaro, then realized he left his wallet at the Coconut Grove and returned to get the wallet. He left the tavern, proceeding along Bennett Drive. As he entered the freeway access ramp, his car was stopped by a Bellingham police officer.

Another police officer testified that he observed a silver Corvette approaching him at a high rate of speed on Marine Drive at about 1:30 a.m. He believed the license plate to read, "IZY 0_," and at trial identified Boyd as the driver of the car. The officer radioed a description of the car before pursuing it. He turned on his siren and chased the car through several residential streets and an alley, after which he lost sight of it. At this point, he again radioed the dispatcher. Shortly after, he received a dispatch that an anonymous caller had reported a silver Corvette traveling on Bennett Drive toward the freeway. Shortly after this radio communication, another officer radioed that he had stopped a silver Corvette on the freeway access ramp. The Corvette was Boyd's.

At trial, several police officers testified to hearing the officer's initial description of the car. One officer testified he heard a communication stating the first license plate letter was "I," while the dispatcher remembered hearing "IZX."

Boyd, in contrast, testified he was in the general area but was not involved in any police chase. Boyd presented evidence tending to show that, in the limited time stated by the officer, he could not have traveled from the point where

---

[1]This was Boyd's second trial on these charges. The jury in Boyd's former trial failed to reach a verdict.

the officer lost sight of the Corvette to the point where he was stopped. Two residents of the chase area testified they heard no sirens and believed they would have heard a siren had one been used. Boyd's companion in the car testified that he had "dozed off" and would have awakened if the car had been involved in a high speed chase.

Boyd contends that resolution of this testimonial conflict in his favor would have been materially aided by introducing evidence of the contents of the officer–to–station radio transmission tapes pertaining to his case. Bellingham police regularly record all such radio transmissions on 24–hour tapes, covering 6 a.m. of one day to 6 a.m. of the next. The recordings are routinely erased after 30 days.

On October 19, Boyd's attorney requested from the prosecutor

> a true and correct transcribed record of the relevant law enforcement recordings regarding the above–entitled matter. For your convenience the cause number is 10410 and involves . . . the eluding of a police officer. These events occurred on the evening of September 25, 1979.

Exhibit 9. Based on the reference to events occurring "on the evening of September 25," the tape beginning at 6 a.m. on September 25 was preserved, but the tape desired by Boyd (beginning at 6 a.m. on September 24) was destroyed.

Boyd moved to dismiss the charges because of police failure to preserve specifically requested evidence. The trial judge concluded that the destruction resulted from negligence and bureaucratic mix–up rather than deliberate destruction and denied the motion. At trial, a missing evidence instruction was given.[2]

Boyd asserts that the transcript of the tapes would have

---

[2]The instruction provided as follows: "That as a matter of routine procedure the Whatcom County Sheriff and the Bellingham Police Department keep a tape of law enforcement officers' radio transmissions and the tape is kept for a period of thirty (30) days after the transmissions are made; that such a tape was made for the period here in question; that within thirty (30) days of this event that the defendant's attorney requested that the tape be transcribed and produced here in court, but it was discovered that the tape was inadvertently erased subsequent to the defendant's request and is unavailable for trial."

conclusively shown the time of each call from each location, supporting his contention that he could not have traveled from where the officer lost sight of the Corvette to where Boyd was stopped. He also asserts that the absence of the sound of a siren on the tape could rebut the police officer's testimony that a siren was used and support evidence of witnesses from the alleged chase area who heard no siren. Boyd further contends that the recording of the police officer's original identification of the car could also rebut the officer's testimony on that point. He contends that destruction of this evidence denied him due process of law.

It is well established that destruction or withholding of evidence violates due process if the evidence is favorable to a defendant and material to his case. *Brady v. Maryland,* 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963); *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976); *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976); *State v. Temple,* 5 Wn. App. 1, 485 P.2d 93 (1971).

In *Seattle v. Fettig,* 10 Wn. App. 773, 776, 519 P.2d 1002 (1974), evidence was held to be material to the defense if it tends to rebut a police officer's testimony; evidence was held to be favorable if there was at least a "reasonable possibility" the evidence rebutted such testimony. In *State v. Wright, supra* at pages 789–90, the court found a denial of due process where "there was a reasonable possibility that the evidence destroyed . . . was material to guilt or innocence and favorable to appellant." In *State v. Canaday,* 90 Wn.2d 808, 815, 585 P.2d 1185 (1978), our Supreme Court adopted the test enunciated in *United States v. Agurs,* which was "a refinement" of the *Brady* rule. In *Agurs,* at pages 112–13, the Supreme Court defined materiality in these terms:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitu-

tional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

(Footnotes omitted.)

*Agurs* distinguished cases where specific requests were made, stating that "[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." *United States v. Agurs, supra* at 106. *Agurs* did not, however, involve a specific defense request for preservation of evidence. The court stated that "[t]he test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made." (Footnote omitted.) *United States v. Agurs, supra* at 106. Reviewing *Brady v. Maryland,* the court found that implicit in the requirement of materiality is a "concern that the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs, supra* at 104. This test has been interpreted as synonymous with the constitutional "harmless error" standard and as requiring reversal whenever "there is a 'reasonable possibility' that the error materially affected the verdict." (Footnote omitted.) *United States v. Goldberg,* 582 F.2d 483, 489 (9th Cir. 1978), *cert. denied,* 440 U.S. 973, 59 L. Ed. 2d 790, 99 S. Ct. 1538 (1979). Boyd contends that this "concern that the suppressed evidence might have affected the outcome" is equivalent to the "reasonable possibility" standard of materiality employed by our Supreme Court in *State v. Wright, supra.* We agree.

The failure to make a timely specific request for preservation of evidence is a factor to be considered in determining if a defendant has been denied due process of law. *See State v. Renfro,* 28 Wn. App. 248, 622 P.2d 1295, *review granted,* 95 Wn.2d 1018 (1981); *State v. Ervin,* 22 Wn. App.

898, 594 P.2d 934 (1979); *State v. Weygandt,* 20 Wn. App. 599, 581 P.2d 1376 (1978); *State v. Scriver,* 20 Wn. App. 388, 580 P.2d 265 (1978). Another division of this court has, however, questioned the appropriateness under *Agurs* of the "reasonable doubt" standard applied in *State v. Canaday, supra,* where a request for preservation of specific evidence was made. *State v. Nerison,* 28 Wn. App. 659, 625 P.2d 735 (1981).

Two factors present in *Canaday* suggest that the case may not have afforded an adequate opportunity to evaluate the significance of a specific request for preservation of evidence. The statement of facts does not disclose whether the request preceded or followed the routine destruction of used Breathalyzer ampoules involved in that case. Here, the tape was available when Boyd requested its preservation. Second, the used ampoules in *Canaday* could not be retested so as to permit accurate and reliable appraisal of the evidence. Consequently, expert testimony would have been inadmissible to impeach the original test results, while rebuttal of the police officer's testimony concerning the propriety of the testing procedures could be accomplished by more direct means. The destroyed tape was subject to no such inherent evidentiary deficiencies. We conclude that a defendant who has made a "specific request" for preservation of evidence is denied due process if there is a "reasonable possibility" the evidence was favorable and material to his defense. *United States v. Goldberg, supra. See State v. Wright, supra.*

We agree with Boyd's contention that he made a "specific request" for preservation of the tape. A "specific request" is one giving the prosecutor or police "notice of exactly what the defense desired." *United States v. Agurs, supra* at 106. Counsel identified the tape by specifying Boyd's name, the charge, the cause number, and the correct date. This is sufficient notice of exactly what the defense desired, notwithstanding the reference to the events as occurring "on the evening" of September 25. A defendant should not be expected to know the procedure by which the

police classify or segregate potential evidence. When the request is as specific as this one, and yet the police cannot locate the desired evidence on the basis of a defendant's description thereof, they are free to obtain clarification from defense counsel.

We also agree with Boyd's contention that there was a "reasonable possibility" the evidence was favorable and material to his defense. The first trial ended with the jury unable to reach a verdict. At both trials, there was a substantial dispute as to whether police arrested the correct individual. The jury was confronted with two divergent lines of testimony. There was no tangible or physical evidence directly supporting either version of events. The evidence showed there was no continuous observation of the Corvette. An anonymous tipster's subsequent sighting of a Corvette on Bennett Drive, which led directly to Boyd's arrest, is equally consistent with both lines of testimony. The State argues that corroboration of the pursuing officer's testimony by other officers shows that the tape would not have been favorable. But not all such evidence was truly corroborative. For example, the dispatcher testified that she heard the officer identify the first three letters of the license as "IZX" (the correct letters) rather than "IZY," as the officer testified he reported. Examining the evidence in its totality, we conclude that there was at least a "reasonable possibility" the tape would have been favorable to Boyd and material to resolution of the issues at trial.

Although there is a broad range of sanctions available to the trial court confronted with destruction of evidence, *State v. Wright, supra; State v. James,* 26 Wn. App. 522, 614 P.2d 207 (1980); *State v. Bernhardt,* 20 Wn. App. 244, 579 P.2d 1344 (1978), dismissal is the appropriate sanction if a lesser remedy is ineffective to assure a fair trial. *State v. Wright, supra.* We conclude that the denial of due process at Boyd's trial was not cured by the missing evidence instruction given and cannot be cured by a new trial in which the destroyed evidence is equally unavailable. Consequently, Boyd's conviction must be reversed and the

charges dismissed.

Our decision does not, as the State contends, require the police to preserve *every* tape recording of such radio transmissions. The State's duty is to disclose and preserve all potentially material and favorable evidence. *State v. Canaday, supra; State v. Wright, supra.* Some evidence, of course, has such obvious value as to require preservation and disclosure even absent a specific request for disclosure. *United States v. Agurs, supra.* But the police are required to preserve evidence only where it is reasonably apparent the evidence is material. *State v. Hall,* 22 Wn. App. 862, 593 P.2d 554 (1979). These tapes were not prepared in connection with a particular investigation and apparently were used only for internal police purposes. Potential materiality of such tapes would not be reasonably apparent in most cases. A specific request, however, serves to alert the State that such a record may be material in a particular case even though such evidence would not likely be material in the majority of cases.

The judgment is reversed and the proceeding dismissed.

DURHAM and CORBETT, JJ., concur.

Reconsideration denied August 27, 1981.

Review denied by Supreme Court November 6, 1981.